Hay, Judge,
delivered the opinion of the court:
This case is before us on a motion for a new trial made by the plaintiff. In that motion it is conceded that the' findings of fact heretofore found by the court are correct; but the plaintiff contends that the court erred in its conclusion of law. Upon the facts found the court is of the opinion that its conclusion of law is correct, and therefore adheres to its former opinion which was as follows:
This is a suit to recover the sum of $14,425.94, the amount of an award made by a board of referees duly appointed by the Interstate Commerce Commission under section 8 of the *249 Federal control act, 40 Stat. 451, and the transportation act of 1920,41 Stat. 456, as the just compensation of the plaintiff for the alleged taking and use of its railroad property by the United States for the period beginning December 28, 1917, and ending June 29, 1918. The Director General of Railroads having refused to accept the report of the board of referees as a basis for settlement the plaintiff filed its petition in this court as provided by law.
The finding of the amount of the award for just compensation by the board of referees is prima facie in this court, but the prima facie effect of the award may be overcome if it appears that the board applied an erroneous measure of compensation, or if it appears from the facts found that there was no taking by the Government of the plaintiff’s property for public use.
The first question which is presented for our consideration is, Did the Government take possession of the railroad of the plaintiff and operate and control it for the public use %
It is not always necessary that in order to constitute a taking the property should be absolutely taken. If there is a serious interruption to the common and necessary use of property, such an interruption may .be equivalent to the taking of it. But there must be evidence to show that the use of the property was such that its common and necessary use was so seriously interrupted as to cause loss and damage to the owner thereof, and that the owner was deprived of its control and operation in such manner as to prevent him from deriving the benefits which would have accrued had the property not been taken. These principles are particularly apjfiicable in cases where the alleged taking is for the use of the property for a time, and not the taking of the title. There can be no taking of private property for public use unless there is possession and use thereof for public purposes, evidenced by some act which deprives the owner of the use, possession, control, and operation of his property. A mere declaration of an intention to take can -not constitute a taking. The proclamation of the President setting forth that on some future day he will take over the property of certain owners does not of itself constitute a taking of the property. There must be some definite act, *250 some positive proceeding by which the property is actually taken and appropriated before the taking' can be consummated. It must be such a taking of the property as that the owner is deprived of, or circumscribed in some way, in the use and enjoyment of his property. If his possession is undisturbed and his property in its value and use is undiminished it can not be said that there is a taking within the meaning of the Constitution.
The plaintiff in this case in order to establish a taking relies upon the proclamation of the President and certain orders which the Director General of Railroads sent to it during the period when the plaintiff alleges that its property was under the control of the Government. The proclamation was issued by the President on December 26, 1917, and provided “ that the possession, control, operation, and utilization of such transportation systems * * * shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads,” and “that from and after 12 o’clock on said 28th day of December, 1917, all transportation systems included in this order and proclamation shall conclusively be deemed within the possession and control of said director without further act or notice.” The possession, control, operation, and utilization to be exercised by the Director General of Railroads in accordance with the proclamation meant that possession must be at least of such a character as to deprive the owner of its control and operation, and that the owner of the property could no longer use it for its own purposes.
The proclamation by itself did not constitute a taking. If no other .step had been taken, and no agent of the President had done anything to carry into effect the proclamation of the President, it would certainly not have Ijeen regarded as a taking of the property. The contention of the plaintiff that its property was taken by virtue alone of the proclamation of the President can not be sustained.
The plaintiff, however, relies further upon certain general orders sent out by William G. McAdoo as Director General of Railroads as evidencing the intention of the (Government to take its property and as showing that its property was actually taken. Some of these orders were sent to the plaintiff; many of them were not sent to the plaintiff.
*251 Among those sent to the plaintiff was general order No. 1, dated December 29, 1917, which is addressed to “All concerned,” and declares that the Director General of Eail-roads “ has taken possession and assumed control of certain transportation systems described in the proclamation of the President.” The receipt of this order by the plaintiff did not constitute a taking of the plaintiff’s prbperty. It did not by its terms signify or state that the property of the plaintiff was being taken possession of. It contained nothing which ousted or tended to oust the property of the plaintiff from its control. There were no instructions in the order which caused the plaintiff to change the management and operation of its property. The plaintiff was not deprived of or circumscribed in any way in the use and enjoyment of its property.
The plaintiff also received general orders Nos. 2, 14, and 28, and two circulars, but none of these interfered in any way with the control and operation of its property by the plaintiff. During the whole period for which the plaintiff claims compensation for the taking and use of its property the plaintiff had absolute control of it. By the testimony of its own general manager it appears that the plaintiff continued to operate its road from December 26, 1917, to June 29,1918, exactly as it always had operated it. No possession of it was taken, no control over it was exercised, and no use of it was made by the Government at any time. Under this state of facts it is difficult to perceive how a taking of this property for public use can be deduced.
The plaintiff seems to rely upon the following letter, which it argues shows that the Government had to have possession in order to relinquish it. The letter is as follows :
Deae SiR:
It is not clear whether the Marion & Eye Valley Eailroad Company has at any time been under Federal control. To remove any possible question, this order is issued definitely relinquishing same.
Very truly yours,
JOHN BARTON PAYNE.
Mr. T. S. Ambler,

General Manager,

Marion db Rye Y alley Ry. Go.

*252 The letter shows on its face that the general counsel of the railroad administration did not believe that the property of the plaintiff was under Federal control, and the letter had for its object the removal of any possible question about the matter.
After reviewing very carefully all the evidence upon which the plaintiff relies to establish a taking,of its property for public use the court is of opinion that no taking is shown which comes within the meaning of the Constitution and the law. It follows that the plaintiff can not recover.
It may not be amiss, however, to point out that even if the Government may be said to have had technical control of plaintiff’s property, yet that control was not of such a character as would entitle the plaintiff to compensation.
The plaintiff insists that both the President and the Congress provided for the compensation to which the railroads under Federal control would be entitled, the President in his Proclamation and the Congress by the act of February 28, 1920, 41 Stat. 456, and the act of March 21, 1918, 40 Stat. 451. Without going into the method of compensation set out in the statutes it is sufficient to say that the question of compensation is a judicial question, and just compensation must be determined by the evidence produced before the court. The court is not bound in its findings as to what is just compensation to adopt the method of ascertaining it which may be suggested by .the statute. The just compensation to be awarded is to be measured by the loss caused to the property by the taking. The plaintiff in this case is entitled to receive the value of what it has been deprived, and no more. “ To award it less would be unjust to it, to award it more would be unjust to the public.” Bauman v. Ross, 161 U. S. 548, 574. The question is what has the plaintiff lost? If it has lost nothing it would be gross injustice to require the United States to pay something for nothing. What has the plaintiff lost by the supposed taking? There is no proof that it has lost anything thereby. Its property has never been out of its own control. It operated it without let or hindrance by the Government during the entire period for which it is claiming that the Government had possession of it. If *253 any loss was incurred during that time it was the result of the plaintiff’s own operation and control of its own property.
All the provisions of the statutes which look to compensation of owners of railroad properties could only apply to properties which were taken possession of by the Government and actually operated and controlled by it. Surely Congress never intended that the United States should pay for the losses or depreciation of properties which the Government did not operate, did not control, did not use, and •did not take possession of. For instance, provision is made in the statute for “adequate provision for maintenance of the property.” Surely this can only mean adequate provision for maintenance of property in the control of and use by the United States. If the plaintiff did not adequately maintain its property while it was in its own possession and being used by it to the exclusion of the United States and •everybody else, is it possible that the United States must pay the plaintiff for the maintenance of its property?
Other reasons are advanced by the plaintiff, and supported by the findings of the board of referees, as to why compensation should be awarded the plaintiff in this case. It is not deemed necessary to recite these reasons which are not sufficient to combat the plain and uncontradicted evidence that the alleged taking of the plaintiff’s property did not ■disturb it in the use and control of its property, nor did it restrict the right of the plaintiff to dispose of it, nor did it cause the plaintiff any pecuniary loss. So if the technical control of the plaintiff’s property by the United States caused it to lose nothing, no award of compensation can in justice be made. We think that the property of the plaintiff was not táken by the Government. If there was technical control of the property by the Government it was of such a character that it did not cause any loss to the plaintiff, and does not justify the award of any compensation.
The plaintiff, however, contends now, for the first time, that if it is not entitled to recover under the act of March 21, 1918, 40 Stat. 454, it is so entitled under section 204.of .the act of February 28, 1920, 41 Stat. 460.
*254 Section 204 (c) provides as follows:
“As soon as practicable after March 1, 1920, the commission shall ascertain for every carrier, for every month of the period of Federal control during which its railroad or system of transportation was not under Federal operation, its deficit in railway operating income, if any, and its railway operating income, if any (hereinafter called ‘Federal control return ’), and the average of its deficit in railway operating income, if any, and of its railway operating income, if any, for the three corresponding months of the test period taken together (hereinafter called ‘test period return ’) : Provided, That ‘ test period return ’ in the case of a carrier which operated its railroad or system of transportation for at least one year during, but not for the whole of, the test period, means its railway operating income, or the deficit therein, for the corresponding month during the test period, or the average thereof for the corresponding months during the test period taken together, during which the carrier operated its railroad or» system of transportation.”
Section 204 (d) provides as follows:
“For every month of the period of Federal control during which the railroad or system of transportation of the carrier was not under Federal operation, the commission shall then ascertain (1) the difference between its Federal control return, if deficit, and its test period return, if a smaller deficit, or (2) the difference between its test period return, if any income, and its Federal control return, if a smaller income, or (3) the sum of its Federal control return, if a deficit, plus its test period return, if an income. The sum of such amounts shall be credited to the carrier.”
It will be observed that what the statute provides for is a deficit to be paid to railroads not under Federal operation, which deficit is to be ascertained in the manner provided for in that act.
In this case there is no proof that the plaintiff had a deficit. The case of the plaintiff is based upon the Federal control act, and the compensation which it is suing for is the compensation which that act provides for. It has no relation to the guaranty which is alleged to have been made by Congress in the transportation act of 1920, and no proof was offered by the .plaintiff and no steps have been taken by it to bring itself under the provisions of the latter act. That being so this court can not undertake to pass *255 upon the question whether the plaintiff is or is not entitled to recover under the provisions of the transportation act of 1920.
The motion of the plaintiff for a new trial must be denied, and its petition must be dismissed. It is so ordered.
Graham, Judge; DowNey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.